WHITE *et al. v.* THE EAST LAKE LAND COMPANY.
THE EAST LAKE LAND COMPANY *v.* WHITE *et al.*

96  415
d118 255

1. If a riparian proprietor, by placing a dam across a stream running through his land, obstruct the same so that, instead of running on as theretofore to the riparian proprietor below, the water accumulates in an artificial lake or pond, and by means of percolation and evaporation is diminished in quantity to such an extent as to deprive the lower proprietor of the reasonable quantity of water to which he is entitled and which he would otherwise receive, such

obstruction of the stream operates as a diversion of the water; and for damages thus occasioned, the lower proprietor is entitled to recover. If the diversion be complete, he is entitled to full damages; if partial, the damages should be apportioned.

2. The question as to whether or not the use of the water by the first proprietor is reasonable, being necessarily dependent upon the character and size of the stream, the uses to which it is subservient, and the varying circumstances of each case, is one of fact for determination by the jury.

3. For other than domestic purposes, the right of each proprietor in the use of the water is limited by the rights of the other proprietors; and consequently, if an upper proprietor appropriate to his own use more of the water than the proportionate share to which he is entitled, and thereby inflict upon a lower proprietor an appreciable injury, the latter may maintain an action for the recovery of damages therefor.

4. Where one of the questions at issue was whether the plaintiff's mill lost custom because the mill had stopped grinding by reason of the lack of a sufficient supply of water to run the same, proof was admissible that some of the customers had made statements to the effect that they withdrew their custom from the mill for that reason.

July 15, 1895.  By two Justices.

Actions for damages.    Before Judge GRIGGS.    DeKalb superior court.    August term, 1894.

LEWIS & GREEN and H. C. JONES, for plaintiffs.

F. A. QUILLIAN and J. S. CANDLER, for defendant.

SIMMONS, Chief Justice.

1–3. Where the natural channel of a watercourse lies along the lands of different proprietors, the water is the common and indivisible property of all of them; their privileges therein are in all respects equal, and except in so far as the right may be qualified by grant, prescription or otherwise, each has equally with the others a right to the use of it for domestic or business purposes. Each has a right to have the water come to his land in its natural and usual flow, subject only to such detention or diminution as may be caused by a reasonable use of it by other proprietors. The property in the water being indivisible, there can be no diversion

or severance of a proportionate part of it. Each may divert so much, and so much only, as will not unreasonably impair the rights of other proprietors. "An unreasonable use of it, whereby others are deprived in whole or in part of the common benefit, is an actionable injury, even though there is no present actual damage, and without regard to the question whether the act which causes the injury is wilful or malicious." Gould on Waters, §207. If the diversion is complete, that is to say, if by such unreasonable use on the part of another, a proprietor is deprived entirely of his enjoyment of the water, he is entitled to recover full compensation in damages for the loss thus occasioned; if the diversion is merely partial, the jury should apportion the damages accordingly. He is in any event entitled to nominal damages for the invasion of his rights. (28 Am. & Eng. Enc. of Law, "Watercourses," p. 983.) The measure of each owner's rights in the use of the water is the reasonableness of the use. For the ascertainment of what is a reasonable use, no definite rule is or can be laid down. Whether the use is reasonable or not must depend upon the character and size of the stream, the uses to which it is subservient, and other circumstances of the particular case; and in an action of this kind the question is therefore one of fact to be determined by the jury, and not one of law for the court. (*Pool* v. *Lewis*, 41 *Ga.* 162; Washburn on Easements and Servitudes, 266, 277, 4 ed. pp. 379, 380.) Construing together the provisions of our code on this subject, as contained in sections 2227, 2231 and 3018, they do not change the common law above stated.

In the first of the cases now under review, that of *J. M. White* v. *East Lake Land Company*, the petition alleges, that the plaintiff is proprietor and owner, and has been since 1877, of a grist-mill, saw-mill and cotton-gin on lot of land 118 in DeKalb county; that he has

v 96-27

no other means of propelling the mill and gin than by water-power obtained from Doolittle creek, upon which said mills are situated, said creek being formed by the confluence of two smaller streams, the larger one of which, the main tributary of Doolittle creek, has its source in what is known as East Lake in said county; that during the spring and summer of 1891 defendant built a long and high dam across said main tributary, and thereby did wrongfully divert, cut off and stop, during the period commencing about the last of July or first of August, 1891, and ending about the first of January, 1892, five sixths of the natural volume of water flowing through Doolittle creek to plaintiff's mills, which was necessary to the operation of the mill and gin in its accustomed manner, as it had flowed, ought to have flowed, ought now to flow, and would have continued to flow without interruption, had not defendant so cut off and stopped the flow of the water by the building of the dam, which supply of water plaintiff had rightfully enjoyed until it was so cut off and stopped; and by the act so complained of, defendant has damaged plaintiff $1,250, by loss of grinding, sawing and ginning. The declaration was demurred to on the grounds: (1) that it fails to show any act of negligence committed by defendant; (2) that it shows that the defendant simply exercised a legal right, and fails to show that such right was exercised in an illegal or improper manner; (3) that it fails to show in what manner the plaintiff was damaged or any damages he would be entitled to recover; and (4) that it sets forth no cause of action. The court overruled the demurrer, but after hearing the evidence, granted a nonsuit. The plaintiff excepted to the grant of a nonsuit, and the defendant, by cross-bill, excepted to the overruling of the demurrer. Tested by what we have said as to the law on this subject, it is clear that the court was right in overruling the demurrer. We

think the court erred, however, in granting a nonsuit. The evidence tended to show, that by reason of the erection of the defendant's dam, there was some detention and diminution of the natural volume of water which would otherwise have flowed to the plaintiff's mill, and that he thereby sustained pecuniary loss. As we have already shown, it was for the jury and not for the court to say whether the detention was unreasonable or not; and although, under the evidence, the extent of the loss is somewhat uncertain, yet if there was an unreasonable detention which interfered with the plaintiff's enjoyment of the water, he was entitled to at least nominal damages.

The declaration in the other case, that of *J. M. White and Susan A. White* v. *East Lake Land Company*, alleges that the plaintiffs are tenants in common, and have been since 1877, in a certain mill-site, with a grist-mill, saw-mill and cotton-gin thereon; and allegations similar to those in the other declaration are made as to the dependence of the mill upon the water supply from Doolittle creek, and the erection of the dam; and it is further alleged, that by said erection defendant wrongfully changed the entire character of the main tributary of Doolittle creek from a narrow stream to a broad lake known as East Lake, containing about thirty-five acres of land, and thereby diverted the water from flowing through said main tributary of Doolittle creek to plaintiffs' mills in its accustomed manner, which was absolutely necessary to their successful operation, as it had flowed and would have continued to flow had not defendant so diverted the flow by the erection of the dam and the making of the lake; by which the water that ought naturally to flow through Doolittle creek to plaintiffs' mills and gin was carried off by evaporation into the atmosphere and by percolation into the earth; which supply of water plaintiffs had enjoyed in its natural and accustomed flow

through Doolittle creek until wrongfully diverted by defendant, by which act defendant has rendered the millsite of plaintiffs practically worthless, to their damage $3,000. This declaration was demurred to on the same grounds as the declaration in the other case, and the demurrer was sustained. We think the court erred in sustaining the demurrer. The only substantial difference in the two declarations is in the allegation contained in the latter, as to the manner in which the water was diverted, it being alleged therein that the water which ought naturally to have flowed to the plaintiffs'. mill etc. was, by reason of its being spread over a large surface in consequence of the erection of the dam, carried off by evaporation into the atmosphere and by percolation into the earth. It was argued, that the water thus lost having been carried off by natural causes, there could be no recovery for such damage as may have resulted therefrom. This loss, however, would not have occurred but for the building of the defendant's dam; and we see no reason why a diversion of this kind is not equally wrongful with a diversion accomplished by other means. That such a diversion is unlawful, see Gould on Waters, §§205,. 208; Washburn on Easements and Servitudes, 224, 4 ed.. p. 332; Ferrea v. Knipe, 28 Cal. 341.

4. One of the questions at issue being whether the plaintiffs' mill lost custom because the mill had stopped grinding on account of the lack of a sufficient supply of water to run the same, it was, according to the decision of this court in Stewart v. Lanier House Co., 75 Ga. 582, error to exclude the testimony of J. M. White as to the statements of customers that they had withdrawn their custom for this reason.

Judgment in each case, on the main bill of exceptions,. reversed; on the cross-bill, affirmed.