## PINE et al. v. MAYOR, ETC., OF CITY OF NEW YORK.

### (Circuit Court, S. D. New York.    June 27, 1900.)

1. CIRCUIT COURT—JURISDICTION—AMOUNT IN CONTROVERSY—ALLEGATION—DENIAL—ABSENCE OF EVIDENCE—EFFECT.

   In the absence of a plea to the jurisdiction of the circuit court, an allegation in the bill that the amount of damage exceeds $2,000, though denied by answer, is sufficient, in the absence of proof, to give the court jurisdiction, and hence a finding of the amount of damage is unnecessary to sustain the jurisdiction.

2. EMINENT DOMAIN—STATUTE—EXTRATERRITORIAL FORCE.

   A statute of one state to confer the power of condemning lands situated in another state for public purposes would be ineffective.

3. RIPARIAN OWNER—ORDINARY FLOW OF WATER—NATURE OF RIGHT.

   The right of a riparian proprietor on a nonnavigable stream to the use of its ordinary flow of water, undiminished by an unreasonable use by a proprietor above him, is not an easement or appurtenance, but is inseparably annexed to the soil, and is parcel of the land itself.

4. SAME—DIVERSION OF WATER—PUBLIC USE—ABSENCE OF COMPENSATION—CONTINUING WRONG.

   The seizure and permanent diversion of the waters of a stream by a municipal corporation without compensation to the lower owner is a continuing wrong, which is not excused by the fact that the appropriation is for the public benefit.

5. SAME—INJUNCTION—PROPRIETY OF REMEDY.

   Injunction to prevent a permanent and unauthorized seizure and diversion of the waters of a stream is the appropriate and effective remedy; the legal remedy of action for damages being inadequate, in providing for the recovery of only such damage as has already accrued, and hence necessitating a multiplicity of suits.

6. SAME—ABSENCE OF SERIOUS DAMAGE.

   The right of a riparian owner to an injunction to restrain the unauthorized diversion of the waters of a stream exists independently of the fact that his damage from the diversion is not of large amount or serious character.

7. SAME—COMPENSATION TO OWNER—ALTERNATIVE DECREE.

   Though, where the defendant has committed a permanent injury to property, without pretense of a right to take and retain it, a court of equity, in enjoining the trespass, will not render a decree in the alternative providing that unless compensation be made to the injured owner the injunction will issue, yet the issuance of the order may be properly delayed to allow the parties to agree between themselves as to compensation.

Charles C. Marshall, for complainants.

H. T. Dyckman, for defendant.

SHIPMAN, Circuit Judge. The main facts of this case, as presented in the bill in equity, are not controverted in the answer. The complainants, Pine and Muller, are citizens and residents of the state of Connecticut, and each of them owns in fee a separate tract of land in that state, through which, or upon and along which, the Byram river flows. This river, which is, at the lands of the complainants, a nonnavigable stream, is made up of two branches. The east branch is wholly in the state of Connecticut. The west and by far the most important branch rises in Westchester county, N. Y., flows southeasterly for about five miles in that state into Connecticut, and thereafter unites with the east branch at the farm of Muller, about four miles from the New York boundary line. About a mile

103 F.—22

below his farm the united stream forms the eastern boundary of Pine's farm for about 3,725 feet, and thereafter empties into Long Island Sound. Upon his land there is a deposit of feldspar, which he manufactures, and he uses the water of the river for the needs of his farm house and steam mill. Muller's farm has a frontage on both sides of the river of 920 feet, and extends on the west side of the river 450 additional feet, making an entire frontage of 2,290 feet. He uses the water of the river for general farm use. The bill in equity alleged that the damage to each complainant by the act of the defendant would be above $2,400. Shortly before the bill was brought, the defendant began to build a dam across the west branch of Byram river at a point in the state of New York about 700 feet from the Connecticut state line, in order to divert the water of that branch into the Kensico reservoir, which is a part of the defendant's extensive system of water supply for the residents of the city of New York; and the dam has been completed at an expense, without any of its appurtenances, of about $45,000. By private arrangements the defendant settled with the Connecticut mill proprietors on the stream for the injury caused by this dam to their flowage rights, but has never compensated the complainants or other riparian owners for the injury to their riparian rights. The answer admits that the defendant intends to divert some or all the water of the west branch of the river from its natural channel, and avers that the diversion of the whole of it would be of little or no injury to the riparian owners. The diversion of water by the defendant is, as appears by the testimony of Mr. Birdsall, the chief engineer of the system for the water supply of New York, 7,600,000 gallons per day. The total average flow of the river at the junction of the two branches was 24,000,000 gallons per day. The decrease is, therefore, more than one-fourth. Testimony was offered by each party with respect to the value of the two properties, and the amount of pecuniary damage in consequence of the diversion of the water. That there will be an actual, continuing pecuniary damage more than nominal in amount is manifest; but whether more or less than $2,000, or what will be the exact amount, I did not undertake to find, because it was unnecessary. In the absence of a plea to the jurisdiction, the allegation in the bills in equity that the amount of damage in each case exceeded $2,000, "though denied by the answer, even if not sustained by the proof, was sufficient to give the circuit court jurisdiction." Butchers' & Drovers' Stock-Yards Co. v. Louisville & N. R. Co., 67 Fed. 35; De Sobry v. Nicholson, 3 Wall. 420, 18 L. Ed. 263. A number of unknown factors enter into an estimate of damage from a diversion of water,—such as the probabilities of future years of excessive drought, the prospective uses to which the properties may be applied, and the prospective demands for other than agricultural uses,—which cause the estimate of actual pecuniary damage to be one of inaccuracy. The statutes of the state of New York do not undertake to give power to condemn land for public purposes which is situate in another state, and if they undertook to confer such power they would be ineffective. Holyoke Water-Power Co. v. Connecticut River Co., 52 Conn. 570; Farnum v. Canal Corp., 1 Sumn. 46, Fed. Cas. No. 4,675; U. S. v. Ames, 1

Woodb. & M. 76, Fed. Cas. No. 14,441; Rutz v. City of St. Louis (C. C.) 7 Fed. 438. Neither is there a Connecticut statute which authorizes the city of New York to exercise any rights of eminent domain over land in Connecticut.

The conclusions which must result from the foregoing facts have been often clearly stated by various courts, and by none more clearly than by the courts of Connecticut and New York. The principles which underlie the case, or which are applicable, are as follows:

1. The right of a riparian proprietor upon a nonnavigable stream to the use of the ordinary flow of the water of the stream, as it has been accustomed to flow, and not diminished by an unreasonable use by a proprietor above him, "is not an easement or appurtenance, but is inseparably annexed to the soil, and is parcel of the land itself." Wadsworth v. Tillotson, 15 Conn. 366; Clinton v. Myers, 46 N. Y. 511; Smith v. City of Rochester, 92 N. Y. 463.

2. The unauthorized and uncompensated permanent diversion by a municipal corporation of the water of a nonnavigable stream from a riparian owner is not excused by the fact that it was deemed to have been taken for a public benefit. The seizure and permanent diversion is a continuing wrong, unless compensation has been made, either by agreement, or under process of law, and by virtue of authority conferred by the constitution and the statutes of the state. Seifert v. City of Brooklyn, 101 N. Y. 136, 4 N. E. 321; Nolan v. City of New Britain, 69 Conn. 668, 38 Atl. 703; Harding v. Water Co., 41 Conn. 87.

3. An injunction to prevent a permanent and unauthorized seizure and diversion of running water is a proper and is the effectual remedy, because the remedy by an action at law provides only for the damages which had accrued before suit, and compels a multiplicity of suits. It is the only efficient remedy for complete relief. Uline v. Railroad Co., 101 N. Y. 98, 4 N. E. 536; Corning v. Nail Factory, 40 N. Y. 204; Knitting Co. v. Dean, 162 N. Y. 278, 56 N. E. 757.

4. The equitable remedy by injunction exists and is to be exercised in the absence of any legislative authority for the infliction of the permanent injury, although the pecuniary damage to the riparian proprietor is not of large amount. The fact of no serious pecuniary damage is not a hindrance to the right of the riparian proprietor to the restoration of the water to its natural course. This principle has been fully stated by the courts of the state of New York. Corning v. Nail Factory, 40 N. Y. 191; Gilzinger v. Water Co., 66 Hun, 173, 21 N. Y. Supp. 121, affirmed in 142 N. Y. 633, 37 N. E. 566; Knitting Co. v. Dean, 162 N. Y. 278, 56 N. E. 757; Legg v. Horn, 45 Conn. 409.

5. If a court of equity has power in any case by decree to ascertain and order the payment of damages by decree of injunction in the alternative, a court of equity will not exercise such power where the defendant has committed a permanent injury without authority of law, and without pretense of right to take and retain the property. Pappenheim v. Railway Co., 128 N. Y. 436, 28 N. E. 518; Stowers v. Gilbert, 156 N. Y. 600, 51 N. E. 282. But a court of equity can properly delay the issuance of an order of injunction to allow the defendants an opportunity to agree with the complainants in regard to adequacy of compensation. Harding v. Water Co., supra.

Let there be a decree, with costs, that if on November 1, 1900, there shall have been no agreement between the parties as to the amount of compensation to the complainants for the injury they have separately sustained by this diversion of the water of Byram river, and no payment of such agreed compensation, an order of injunction shall issue to restrain the defendant, its officers, agents, and employés, from diverting the water of the west branch of Byram river, or any part thereof, or from preventing in any way said water, or any part thereof, at any time, from flowing through its natural channel before, at, and below the junction of the two branches of said river.