OLIVER *v.* THE UNION POINT AND WHITE PLAINS RAIL-ROAD COMPANY.

<div style="float:right">

| 83 | 257 |
|----|-----|
| 87 | 358 |

| 83 | 257 |
|----|-----|
| f112 | 943. |

</div>

1. The constitutional provision that private property is not to be taken for public purposes without just and adequate compensation, being first paid, is too plain to be misunderstood, and is not to be violated or evaded by the legislature or the courts.

2. The method of ascertaining what is just and adequate compensation is matter for adoption and regulation by the legislature. Inasmuch as trial by jury is not a constitutional right in cases involving the power of eminent domain, a statutory appeal given in such cases from the award of assessors is subject to legislative discretion, both in its allowance and in the consequences of its allowance, the latter being in the nature of terms and conditions of the appeal system.

3. A railroad corporation, created under the general law of 1881, may, after having paid or tendered to the land-owner the compensation awarded by the assessors, prosecute the work of construction pending an appeal from the award to the superior court, the statute allowing the appeal providing expressly that the same shall not hinder or delay the progress of the work.

4. Tender of the sum assessed and awarded, duly made and continued, but refused, is the equivalent of actual payment of the award, in

v 83-17

its effects on the right of the corporation to enter upon the land and prosecute the work of construction.

5. Although the tender was imperfectly pleaded, especially in not making it continuous, yet the impending damage not being irreparable, the fact of tender not being disputed, and no lack of solvency of the corporation being alleged, the discretion of the judge in denying the injunction upon the condition prescribed in his order will not be controlled. Injunction before decree is discretionary in all cases.

July 22, 1889.

Constitutional law Eminent domain. Laws. Railroads. Appeal. Tender. Payment. Pleadings. Damages. Injunction. Practice. Before Judge JENKINS. Greene county. At chambers, March 4, 1889.

Reported in the decision.

COLUMBUS HEARD, for plaintiff.

H. T. LEWIS and JOHN C. HART, for defendant

BLECKLEY, Chief Justice.

This company was chartered under the general railroad law, the act of 1881, found in the code, §1689(a) *et seq.*, its route being located in part upon lands occupied and claimed by Oliver. Before any entry was made upon said lands, the parties proceeded to have the value and the damages assessed by assessors, as provided in section 1689(1). The assessors fixed the compensation at $225, and both parties appealed from the assessment to the superior court, the company giving bond as required by that section. When the work of grading the road approached very near to Oliver's premises, he gave notice not to enter upon the same. The president of the company announced his determination to enter and continue the work as soon as the place was reached in the progress of grading the line. Thereupon Oliver brought his petition for an injunction, praying that an entry upon the land for the purpose of grading the railroad, or for any other purpose, might be restrained until the damage to the same should be

ascertained and paid. The answer, which was sworn to positively by the president of the company, set up, among other things, that before the company offered to construct the road-bed upon the land, or to do any work thereon, it tendered to the plaintiff the amount of the assessment, which he refused to take or to name any amount he thought adequate compensation. The answer also brought in question the plaintiff's title to the premises, and at the hearing evidence was submitted tending to show that the legal title was outstanding in another person, not a party to the proceeding. At the hearing, an order was passed declaring that the injunction prayed for be refused, provided the defendant, within ten days, would enter into bond with good security to pay all the damages that might be eventually recovered on the final trial of this case, but that on failure to give such bond, the writ of injunction issue. To this order Oliver, the plaintiff, excepted.

1. The right of the company to enter and prosecute the work of construction on or through the plaintiff's land, is rested upon the general railroad law, code, §1689(1), which declares that the entering of an appeal and the proceedings thereon shall not hinder or in any way delay the work, or the progress thereof, but the same may proceed, without let or hindrance, from the time said condemnation proceedings are begun. The case of *Chambers* v. *Cincinnati & Georgia Railroad*, 69 *Ga.* 320, is a virtual adjudication that this provision of the law is incompatible with the constitution, if it is to be construed as attempting to confer the right of proceeding with the work pending an appeal taken by the company, without first complying with the constitutional requirement of paying just and adequate compensation. The method for assessing value and damages prescribed by the charter of the Cincinnati & Georgia Railroad, section 11, (acts 1880–1, pp. 254–5–6,)

was in all respects substantially identical with that laid down in the general railroad law; and the provision for prosecuting the work pending an appeal was the same. We consider the decision in that case (there being neither payment nor tender) completely sound, and it is our purpose to adhere to it firmly and faithfully. In the language of Mr. Justice Scholfield, in Mitchell v. Illinois & St. Louis Railroad & Coal Company, 68 Ill. 289, "However important and sacred may be the chartered rights of a corporation, they cannot be more so than is the right of the humblest individual to be protected in the enjoyment of his or her property. The right to take private property without the consent of the owner for public use, after making due compensation as required by the constitution, even under the most favorable circumstances, savors of hardship and oppression. Nothing but a public necessity can justify it, and the welfare of the citizen imperatively demands that it shall never be asserted except in strict conformity with the law of the land."

Nothing can be plainer or more explicit than the terms of our constitution, "Private property shall not be taken or damaged for public purposes without just and adequate compensation being first paid." Code, §5024. Adjudications in other States upon cognate terms, such as first or previously made, deposited, etc., are numerous. Browning v. R. R. Co., 3 Gr. Ch. R. 47; Mettler v. R. R. Co., 25 N. J. Eq. 214; Redman v. R. R. Co., 33 N. J. Eq. 165; Eidemiller v. Wyandotte, 2 Dill. 376: Walther v. Warner, 25 Mo. 277; Ring v. M. R. Bridge Co., 57 Mo. 496; Henry v. R. R. Co., 10 Iowa, 540; Cox v. R. R. Co., 48 Ind. 178; Mitchell v. R. R. Co., 68 Ill. 286; St. Joseph, etc. Co. v. Callender, 13 Kan. 496; Ray v. R. R. Co., 4 Neb. 439; Bohlman v. R. R. Co., 30 Wisc. 105; Dimick v. Brodhead, 75 Pa. 464; Covington, etc. R. R. Co. v. Piel, 8 S. W. Rep. 449; Asher v. R. R. Co., *Ib.* 854.

"Several State constitutions provide that private property shall not be taken for public use without compensation being first made, or contain similar terms. The effect of this provision is to require the payment or tender of the compensation to precede an entry for the construction of the railroad." Pierce R. R., ed. of 1881, p. 166. And see 2 Wood Rwys. §246. No constitution has or can have a plainer provision on this subject than our own, and the provision is one not to be violated or evaded either by the legislature or the courts.

2. The method of ascertaining what is just and adequate compensation, is subject, within certain limits, to legislative discretion. To such proceedings in the exercise of the power of eminent domain the constitutional guaranty of trial by jury does not extend, there being in our constitution no express provision so extending it. Mills Em. Dom. §91, and cases cited; Proffatt Jury Tr. §104; Cooly Const. Lim. (5 ed.), 697; Lewis Em. Dom. §311, and cases cited. The case of *S. W. R. R. Co.* v. *S. & A. Telegraph Co.*, 46 *Ga.* 43, is no direct adjudication upon this point, there being another ground upon which the decision could be and was chiefly rested. The Supreme Court of Kansas, in C. B. U. P. R. R. Co. *v.* A., T. & S. F. R. R. Co., 28 Kan. 453, held that it was optional with the legislature to make assessment by commissioners final, or to allow an appeal therefrom to a jury; and a statute of that State was sustained which provided that on compliance by the corporation with the constitutional requirement touching payment or deposit of the compensation money as fixed by assessment of the statutory commissioners, the corporation might enter and prosecute its work pending an appeal from the assessment, the appeal in the case being taken by the land-owner. Payment or deposit of the compensation assessed in the first in-

stance, was treated as satisfying the constitutional requirement, inasmuch as the legislature might, if it had so chosen, have made that assessment final; instead of doing this, it had allowed an appeal upon terms, and the land-owner having availed himself of the appeal, it was said that he was to be treated as accepting the terms on which the appeal was granted.

3. The legislative intent as expressed in our statute, that is in the 12th section of the act of 1881, (code, §1689(1), *supra*,) is somewhat doubtful, but the doubt is to be solved in the light of the constitution, and in favor of the constitutionality of so much of the legislative scheme as can be harmonized with the organic law. The section declares " it shall be lawful for said corporation to construct its railroad over any lands belonging to other persons, . . upon paying or tendering to the owner thereof . . . just and reasonable compensation for the right of way, which compensation, when not otherwise agreed upon, shall be assessed and determined in the following manner." It then goes on to provide that the corporation shall choose one assessor, the owner another, and these two a third, the choice for the owner, in case of his refusal, to be made by the ordinary. The three assessors are to be sworn, hear evidence, and then by the concurrence of a majority assess the value and the damages. Their award in writing is to be filed in the office of the clerk of the superior court, and be by him recorded, after which it has the force and effect of a judgment or decree of the superior court. Either party dissatisfied with the award " shall have the right, by giving written notice to the other party, within ten days from the time said award is filed as aforesaid in the clerk's office, to enter an appeal in writing from said award to the superior court, . and at the next term of said court, unless continued for legal cause, it shall be the duty of the judge presid-

ing in said cause to cause an issue to be made up as to the damage or valuation of said land, . . . and the same to be tried with all the rights for hearing and trying said cause in the superior court and in the Supreme Court as provided for cases at common law. The entering of said appeal and the proceedings thereon shall not hinder or in any way delay the said corporation's work or the progress thereof, but the same may proceed without let or hindrance from the time said condemnation proceedings are begun; that if said corporation should enter said appeal, it shall give bond and security for the payment of the amount rendered upon the final hearing of said cause. Should no appeal be entered from said award in said time, and should said corporation fail to pay the same, it shall be the duty of the clerk of the superior court, upon the request of any person interested, to issue execution upon such award as in other cases of judgment of the superior court, and said execution may be levied upon any of the property of such corporation as in cases of other executions."

The doubt which arises is, whether in case of appeal, the legislature intended the corporation to pay or tender the sum found due by the award of the assessors, as a condition precedent to the right of entering for exclusive occupation, or, which is the same thing, for beginning the active work of construction. We think such must have been the intent, first, for the reason that a contrary intent would be violative of the constitution; and secondly, because the condition on which the right to construct is expressly put in the previous part of the section, is tender or payment of just and reasonable compensation. *Prima facie* the measure of this compensation is the award of the assessors provided for. That amount being paid or tendered, the appeal and the proceedings thereon are not to delay the work or its progress, but the same may proceed with-

out let or hindrance. The added phrase, "from the time said condemnation proceedings are begun," is all that militates against our construction; and this phrase may or may not be reconcilable with it. If not, all we can say is that it conflicts with the constitution in so far as it contemplates authorizing or legalizing work done before payment is either made or tendered. The provision for issuing execution in case no appeal is taken, does not dispense with the payment, voluntary or compulsory, before entry for permanent occupation; but on the contrary, it affords the means of enforcing payment as of an ordinary judgment, although the corporation might not wish to enter, and might prefer to let the matter drop forever. After procuring condemnation the corporation must pay, whether it completes the appropriation of the land or not.

Our minds have reached a fixed conclusion that the true and only construction of the section we have discussed is, that with or without appeal, there must be payment or tender, upon the basis of the award of the assessors, before the corporation can lawfully begin the work of construction against the will of the land-owner. And such payment or tender may be made without prejudice to the appeal, or the right of appeal, of either party. I & C. R. R. Co. v. Brower, 12 Ind. 374; Chicago, etc. R. R. Co. v. Phelps (Ill.), 17 N. E. Rep. 769. (We cite the latter case on this point without approving its doctrine on the nature of an entry for construction or use.) The land-owner, no matter which party appeals, may accept the tender at the peril of having to refund in case the award is reduced on the trial of the appeal, and the corporation may pay, enter, and go to work at the peril of having its provisional title defeated as by a condition subsequent, if it should fail to pay any additional amount recovered against it by final judgment on the appeal. In this way the statutory

right of appeal can be enjoyed by either party or by both, without infringing the constitution, or necessarily thwarting the legislative intention of allowing the work to proceed pending the appeal, but in no other way apparent to us can both these objects be accomplished.

4. It was competent for the legislature, as it has done, to declare tender a substitute for actual payment where the tender is declined. If the land-owner will not receive the money awarded him by the assessors, he has no one to blame but himself. Cremor v. Nelson, 23 Cal. 464; Browning v. R. R. Co., 3 Green Ch. R. 47; Mettler v. R. R. Co., 25 N. J. Eq. 214; Redmond v. R. R. Co., 33 Ib. 165; Mercer, etc. R. R. Co. v. R. R. Co., 26 Ib. 464; Johnson v. R. R. Co., 17 At. Rep. 574. According to some of these cases, the time of tender, that is, whether before or after the appeal is entered, is material; but we think, under our statute, the time is immaterial, for though the award may be considered as vacated by the appeal for most purposes, the statute restricts the tender to no particular time, and the amount of the award itself is no less certain after appeal than before, nor is its force as *prima facie* evidence of value and damages impaired by the appeal. Of course, should tender be delayed until after the appeal is tried, the amount requisite to tender is to be measured then, not by the award, but by the verdict or the judgment rendered in the appeal proceedings.

5. In the present case, the bill was silent as to tender, and the answer does not disclose the date of it, nor say whether it was before or after one or both appeals were taken, but only that it was before the company went to work upon the land. Neither is the tender repeated or made continuous by the answer. The pleading is altogether too loose and incomplete, but no point, so far as appears, was made before the judge on these minor matters, nor was the fact of actual tender denied. The

judge could have required the tender to be repeated and made continuous, in the usual manner of pleading tender, and probably would have done so had the plaintiff objected to the sufficiency of the answer or the tender on that ground. Moreover, the bill seeks only an injunction, and avers nothing as to irreparable damage, and sets out no specific facts from which a court may see for itself that the damage impending will be irreparable. What mischief will be done to the land by grading the railway over or upon it is not stated. Nothing is alleged as to cuts, fills or embankments, the destruction of timber, or other specific injury. Nor is there any hint or intimation that the railroad company is insolvent, or unable to respond for all damages that may be occasioned by the alleged wrong. The company had already given bond and security for the payment of the amount recovered against it in the appeal proceedings, and it was required by the judge, as a condition of denying the injunction, to give another bond with security to pay all the damages eventually recovered in this case. Under these circumstances, whilst we hold that the tender should have been pleaded more strictly and made continuous, we cannot interfere with the discretion of the judge in denying the injunction on the terms prescribed in his order.     Code, §§3219, 3220.                    *Judgment affirmed.*