## HOWARD v. COUNTY OF BIBB.

The plaintiff failed to state a cause of action, and a general demurrer to his petition was properly sustained.

Submitted July 18, 1906.—Decided January 15, 1907.

Action for damages. Before Judge Hodges. City court of Macon. September 9, 1905.

The petition alleged, in substance, that the defendant, the county of Bibb, while engaged in working a public road in said county, made a partial dam across a stream which flowed through the premises of plaintiff and which furnished one of the chief water supplies to the cows used by him in his dairy business; that in consequence of the collection of trash and waste matter in the water of said stream, and the use of green timber, foliage, and other improper materials in the construction of said dam, the water of the stream became polluted and poisoned to such an extent that, by drinking from it, his milch cows became infected and one of them died, and, because of their infection, a large quantity of his dairy products were rendered unfit for market. There was no allegation of damage, direct or consequential, to the premises, nor of any depreciation of the market value of the same. The defendant demurred to the petition as setting forth no cause of action against it. The court sustained the demurrer and dismissed the petition, to which ruling the plaintiff excepted.

*Nottingham & McClellan,* for plaintiff.

*W. G. Smith,* for defendant.

BECK, J. (After stating the facts.)

1. The courts have given full recognition to the principle of law that the right of the owner of land through which a non-navigable stream flows, to have its waters come on his land in the natural and usual flow and unpolluted, is annexed to the soil and is parcel of the land itself, and comes within the constitutional provision which forbids the taking or damaging of private property for public purposes without just and adequate compensation being first paid. See *City of Elberton* v. *Hobbs,* 121 *Ga.* 749; Mining Co. v. Joplin, 124 Mo. 129. In the case at bar, however, the plaintiff does not seek to recover damages for injuries to the land, nor for injuries to any right of user or enjoyment of land, nor is it alleged that the land is less valuable now that it was formerly. The injury com-

plained of in this case resulted from "the drinking of said [pol- luted] water by plaintiff's milch cows," in consequence of which "for a long time, for several months, plaintiff's said dairy business was seriously injured and damaged, because of plaintiff having sent to market, to his customers, milk and butter, damaged as aforesaid, before his discovery of the exact conditions;" and, "be- cause of said infected condition of the water from said stream, as aforesaid, one of plaintiff's valuable milch cows sickened and died from drinking said water." The case as presented to this court depends upon the determination of one question, and that is whether the county was liable, under the pleadings, for the loss resulting from said injuries.

"A county is not liable to suit unless there is a law which in ex- press terms or by necessary implication so declares." *Millwood* v. *DeKalb County,* 106 *Ga.* 743; Pol. Code, § 341. The constitution (Civil Code, § 5729) declares: "Private property shall not be taken, or damaged, for public purposes, without just and adequate compensation being first paid." In referring to the above pro- vision of the constitution, in the case of *Peel* v. *Atlanta,* 85 *Ga.* 138, this court held that "The effect of such provisions is not to authorize compensation in all cases where the property may be in- jured by public works, but only where the enjoyment of some right of the plaintiff in reference to his property is interfered with and the property thereby rendered less valuable." See also, in this connection, *White Star Line Steamboat Co.* v. *Gordon County,* 81 *Ga.* 48. In the case of *Pause* v. *Atlanta,* 98 *Ga.* 103, it was said that "a distinction should be borne in mind between those cases where one seeks to recover because of the appropri- ation by the public, to the public use, of private property, and damages to one's property sustained in consequence of the con- struction of such public improvement, and that other class of cases in which, though one's property be neither appropriated nor dam- aged, yet in consequence of the construction of such an improve- ment, one suffers damage resulting from personal inconvenience, and consequent damage in the conduct of one's business." This distinction has been strictly adhered to by our court in all its de- cisions on the subject. See *Bacon* v. *Walker,* 77 *Ga.* 339; *Smith* v. *Floyd Co.,* 85 *Ga.* 420; *Campbell* v. *Metropolitan Ry. Co.,* 82 *Ga.* 320; *Barfield* v. *Macon County,* 109 *Ga.* 386. And in all of

the decisions involving the liability of counties for damages caused by the construction of public improvements, the rule has been observed that the measure of damages is the actual depreciation in the market value of the plaintiff's premises. See *Smith* v. *Floyd,* supra; *Roughton* v. *Atlanta,* 113 *Ga.* 948; *City Council of Augusta* v. *Schrameck,* 96 *Ga.* 426; *Streyer* v. *G. S. & F. R. Co.,* 90 *Ga.* 56; *City of Atlanta* v. *Green,* 67 *Ga.* 386; *Terrell County* v. *York,* ante, 166.

In the case of *Austin* v. *Ry. Co.,* 108 *Ga.* 671, Simmons, C. J., quotes the following language from Ricket's case, L. R., 2 E. & I. App. Cases, 198 (cited in the *Peel* case, supra): "The damage must be to the land itself.  .  .  Any other construction would open the doors to claims of so wide and indefinite a character as could not have been in the contemplation of the legislature." And in discussing this proposition the learned Chief Justice says: "Irrespective of all the authorities cited, there is a view of this question arising out of the very language of the constitution itself, which lends great weight to that construction which limits the damages recoverable to those arising from *taking* the land  .  .  or *physically* interfering with some right appurtenant thereto.  .  .  In requiring damages to be first paid  .  .  the conclusion is irresistible, that the constitution guarantees payment to those direct, immediate injuries which certainly, directly, and inevitably flow from the construction of the railroad, highway, or other public works." It would seem, therefore, that if the construction of the public improvements resulted in contaminating the waters of the creek which runs through plaintiff's land, and thereby decreased the value of the land, then the damage thus done would come within the constitutional provision, and the plaintiff would be entitled to have compensation therefor, the measure of such damages being the diminished value of the land because of the pollution of the stream. But we can find no authority for going beyond this. And after a careful examination of all the authorities on the subject, we are of the opinion that the damages claimed by the plaintiff are not authorized, either in express terms, or by necessary implication from the above-quoted provision of the constitution (Civil Code, § 5729), and that there is no statutory provision for subjecting counties to actions for the recovery of damages such as are here sought to be recovered.

Cited by counsel for plaintiff: Civil Code, § 5729; 67 *Ga.* 386; 85 *Ga.* 420; 24 Am. & Eng. Ency. L. 979, 980, 981, 982; 22 Enc. Pl. & Pr. 1161, 1171; 83 *Ga.* 188(2); 2 Cur. L. 2035, 2038; 106 *Ga.* 747; 115 *Ga.* 767; 121 *Ga.* 442; 125 *Ga.* 329 (3, 5); Civil Code, §§ 3905, 3847, 3913, 3906, 3910, 3911; 19 *Ga.* 703; 67 *Ga.* 535; 72 *Ga.* 281; 80 *Ga.* 115; 67 *Ga.* 389; 78 *Ga.* 320; 75 *Ga.* 598.

Cited by counsel for defendant: Pol. Code, § 341; 106 *Ga.* 747; 67 *Ga.* 390; 82 *Ga.* 320-327; 85 *Ga.* 139; 108 *Ga.* 671; Civil Code, §§ 3879, 3061, 3052; 98 *Ga.* 99; 121 *Ga.* 749; 85 *Ga.* 425; 90 *Ga.* 56; 98 *Ga.* 105.

*Judgment affirmed. All the Justices concur, except Fish, C. J., absent.*